MONS IVERSON et al., Appellants, v. WILLIAMS SCHOOL DIS-
TRICT et al., Respondents.

(172 N. W. 818.)

**Schools and school districts — consolidation of schools — selection of sites —
determination by voters.**

Upon appeal from an order denying the plaintiffs' motion for an injunction
*pendente lite* to restrain performance of certain contracts entered into between
the defendant school district and certain contractors, looking toward the con-
struction of a new school building, it is *held:* .

1. Sections 1184, 1185, and 1190, Compiled Laws of 1913, and chapter 127
of the Session Laws of 1915, authorize the questions of consolidation of schools,
the selection of sites, and the building of new buildings, to be determined ex-
clusively by the voters in common school districts.

**Schools and school districts — when injunction will issue.**

2. A temporary injunction will not issue where it is not reasonably apparent
that it will serve some useful purpose.

**Schools and school districts — granting of injunction will be granted when
defect complained of has been remedied by voters.**

3. Where, subsequent to the bringing of an action for injunction to restrain
the performance of a contract, it appears that action has been taken by the
voters of a district remedying the defect complained of, and where no injury
is alleged to have been caused prior to the removal of the alleged defect in
the proceedings looking toward the construction of a school building, the re-
versal of an order denying a preliminary injunction would serve no useful
purpose.

**Schools and school districts — election for selection of site — result of hold-
ing two elections to decide the same question.**

4. Where an election results in a failure to select a site by reason of the
indefiniteness of the question submitted, and the question is again submitted,
resulting in the selection of the site previously assumed to have been legally
selected, the previous invalid selection is ratified.

**Municipal corporations — ratification of contracts.**

5. Municipal corporations may ratify contracts within their corporate pow-
ers which were originally made on their behalf.

Opinion filed May 9, 1919.

Appeal from District Court of Nelson County, *Cooley, J.*

Affirmed.

*Bangs & Robbins,* for appellants.

"The property of the (school) district is regarded as state property, subject to the action of the legislature or school boards, which are deemed state agencies when empowered by statute to act." School Dist. v. King, 20 N. D. 619, 127 N. W. 515.

"Such public institutions as counties or school districts are a part of the machinery of the state, invented by the state itself, and brought into existence by the authorities of the state for the purpose of executing and performing certain public duties in aid of the welfare of the state, and are invested with certain corporate powers by the state." McDonald v. Hanson, 37 N. D. 341, 164 N. W. 8; Skelly v. School Dist. 103 Cal. 652, 37 Pac. 645; Denman v. Webster, 139 Cal. 452, 73 Pac. 140; School Dist. v. Pasadena, 166 Cal. 7, 134 Pac. 985; School Dist. v. Zedikar, 4 Okla. 599, 47 Pac. 482; Okla. R. Co. v. School, 33 Okla. 755, 127 Pac. 1087; Atty. Gen. v. Lowrey, 131 Mich. 643, 92 N. W. 289.

Under this law there is no doubt but that the school board had no power to purchase a site or construct a building save such as had been theretofore authorized. F. & M. N. Bank v. School Dist. 6 Dak. 255, 42 N. W. 756; Capital Bank v. School Dist. 1 N. D. 479, 48 N. W. 363; Benjamin v. Hull, 17 Wend. 437; Petersburg School Dist. v. Peterson, 14 N. D. 344, 103 N. W. 756; Seibert v. Botts, 57 Mo. 430; Township Bd. v. Carolan, 81 Ill. App. 359; Ziesing v. Matthiessen, 79 Ill. App. 560; Greenwood v. Gmelich, 175 Ill. 526, 51 N. E. 565.

"And throughout the whole act, it will be seen that the board have complete and entire control of the establishment and maintenance of the schools, and are furnished with all means and powers necessary for this purpose. By the 9th section of the act, cited *ante,* the power to determine upon the erection of schoolhouses, and the purchase of sites therefor, and the amount of money to be raised for that purpose, is conferred upon the meeting of legal voters of the district mentioned in said section. There can be no doubt that the power conferred by this section is general, extending to all schoolhouses and sites erected or purchased under this section, and we think it is equally evident that it was

the intention of the act to confer this power exclusively upon the voters. Whatever, therefore, is an exercise of this power must be done by the meeting, and not by another body,—the action of the meeting then must be full and complete in itself; to render it so, we think it is necessary that it should be definite and certain as to the number of houses to be erected and sites to be purchased." And see the following authorities: 3 Abbott, Mun. Corp. §§ 1083 et seq.; School Dist. v. Stough, 4 Neb. 357; Gehling v. School Dist. 10 Neb. 239, 4 N. W. 1023; Mizena v. Auten, 45 Neb. 242, 63 N. W. 399; Wilbur v. Wooley, 44 Neb. 739, 62 N. W. 1095; School Dist. v. Randolph, 57 Neb. 546, 77 N. W. 1073; Zimmerman v. State, 60 Neb. 633, 83 N. W. 919; Stadtler v. School Dist. 61 Minn. 259, 63 N. W. 638; McCarty v. Cain, 27 Okla. 82, 110 Pac. 653.

By the provisions of § 1192, Comp. Laws 1913, the electors must determine whether or not a high school shall be provided for and must select the site therefor. Kretchmer v. School Bd. 34 N. D. 403, 158 N. W. 993; Gehling v. School Dist. 10 Neb. 239, 4 N. W. 1023; School Dist. v. Randolph, 57 Neb. 546, 77 N. W. 1073; School Dist. v. Staris, 1 Neb. (Unof.) 85, 95 N. W. 492; Ladd v. School Dist. 70 Neb. 438, 97 N. W. 594; Greenwood v. Gmelich, 175 Ill. 526, 51 N. E. 565; People v. Ry. Co. 270 Ill. 594, 110 N. E. 825; Seibert v. Botts, 57 Mo. 430; Marsh v. Dedham, 137 Mass. 235; Board of Education v. Moross, 151 Mich. 625, 114 N. W. 75.

*J. H. Roberts, C. N. Frich,* and *H. S. Blood,* for respondents.

In view of the allegations of this answer, it would be wrong for the court to order a temporary injunctional order restraining the defendants from acting until the issues framed by the complaint and this uncontroverted affirmative answer could be tried. 22 Cyc. 753, "In any event an injunction must be refused if the complainant's case is so doubtful that it does not appear reasonably probable that he has the right claim and that it is being violated, or if he does not make it appear reasonably probable that an irreparable injury is impending and will occur before the final hearing can be held."

22 Cyc. 948, reads, "If plaintiff had a right of action at the time of filing the bill, but has lost it by subsequent change of circumstances, the bill may be dismissed."

35 Cyc. 962, reads: "A subsequent ratification of an invalid school district contract is governed by the rules applicable to the ratification of the acts of agents generally."

All acts sought by appellants to be restrained having been done fully and, completed, any injunctional order restraining defendants from doing such acts after they had been done would be wholly moot. The facts bring this case squarely within the rule laid down by this court in Thompson v. Vold, 38 N. D. 569.

BIRDZELL, J. This is an appeal from an order entered in the district court of Nelson county, denying an application for a restraining order. The order appealed from was entered in disposing of a motion heard on July 18, 1918. The notice of motion apprised the defendants that the plaintiffs would move for an order commanding them "to refrain and abstain from carrying out, fulfilling, and performing the contracts entered into by the said Williams School District and Wm. Comeau and Anton Evanstad, and the Colburn School Supply Company for the construction of a consolidated school building in said Williams School District, and to abstain and refrain from authorizing the payment of or paying any moneys to the said William Comeau and Anton Evanstad, and the Colburn School Supply Company, on said contracts or doing any act toward carrying out and performing said contract." The motion was supported by plaintiffs' verified complaint in the action and by the affidavit of one Mons Iverson. From these it appears that the facts relied upon to justify the issuance of the restraining order are as follows:

On February 1, 1918, at a special meeting of the school board it was decided to call a special election to vote upon the question of consolidating.all the schools of the school district, to select a building site for a central school, and to provide a suitable building. The date fixed for the election was February 21, 1918. The election was duly noticed, and at the election a ballot was provided for use (omitting title) as follows:

For consolidation of all the schools of Williams School District, Nelson county, North Dakota.

No ............................................................ ☐
Yes ............................................................ ☐

For the selection of building site for Central School.

Yes ................................................... □
No ................................................... □

For the provision of a suitable school building.

Yes ................................................... □
No ................................................... □

At the election there were thirty affirmative votes on each proposition and ten negative. On April 1, 1918, another election was held upon the question of bonding the district in the sum of $8,000 for the purpose of building a consolidated school. At this election fifty-one votes were cast, thirty-two being in favor and nineteen against the proposition. Thereafter the school board proceeded to contract for the purchase of building plans from the Colburn School Supply Company, for the sum of $200, and entered into a contract with the defendants Comeau and Evanstad for the construction of the proposed building, exclusive of heating and ventilating plant, for the sum of $11,425. It is alleged that the defendants have commenced to carry out the construction contract, and that unless restrained they will issue warrants in discharge of their pretended obligations to the different contractors.

The contention of the illegality of the contracts is based directly upon the insufficiency of the ballot on the proposition of the selection of a site, and upon an alleged excess of indebtedness created by the contract. In the affidavit in support of the motion and in the complaint it was charged that it was proposed to erect a building upon a site in the southwest corner of the southwest quarter (S. W. ¼) of section 15, township 152, range 59. It was further alleged that the site was not, at the time, and never had been, owned by the district.

An affidavit was filed, signed by the members of the school board, stating that at the time the election was held, the school district was the owner in fee of this site, which was situated in the geographical center of the district. The affidavit also takes issue on the question of the amount of funds available and legally possible to devote to the construction of the building, claiming that the contracts are well within the limit.

After the order denying the injunction was made and before it was

filed in the office of the clerk of the district court, the defendants served an answer upon appellants' counsel, which was later filed and in which it was alleged that after the commencement of the action the school board called another election at which were submitted questions as follows:

"(1) To select a site comprising 2 acres of land, located in the southwest corner of the southwest quarter (S. W. ¼) of section 15, in township 152, N., range 59 W., in the said Williams School District, as a site for the said consolidated school; and

"(2) Authorizing the said board of school directors to provide a suitable school building for use as a consolidated school to be erected in the year 1918 on the said site at a cost not to exceed $12,000."

It was alleged that this election was held on July 20, 1918, that eighty votes were cast, of which forty-five were in favor of both propositions and thirty-five against. The defendants, in the answer, ask that the defect, if any, in the previous election of February 21, 1918, be adjudged remedied by the election of July 20, 1918.

The appellants ask that the correctness of the order of the trial court denying the injunction *pendente lite* be determined in this court upon the basis of the facts as they existed at the time the order was signed; that is, prior to the election in July, which, if valid, resulted in the selection of the site upon which it was proposed in the first place to erect the building. The brief is devoted almost wholly to a consideration of the question as to whether or not directors of common-school districts possess the power to select a site for school buildings. The statutory provisions, §§ 1184, 1185, and 1190, Compiled Laws 1913, amply support appellants' contention in this respect. The sections referred to leave no room for doubt that questions of the location of consolidated schools and the building of schoolhouses in common-school districts are to be decided by the voters of the district. Henderson v. Long Creek School Dist. 41 N. D. 640, 171 N. W. 825.

But before counsel's contention as to the lack of power in the directors to determine the location of the building can be considered as decisive upon this appeal, it must appear that the reversal of the order denying the temporary injunction will serve some useful purpose, and will not merely amount to the decision of a moot question. It is well settled

that an injunction will not be issued unless it will serve some useful purpose (22 Cyc. 781) ; and where it appears that, by reason of circumstances arising subsequent to the bringing of the action, the plaintiff will not be entitled to the permanent relief sought, a temporary injunction should not issue.   22 Cyc. 755, 781; 16 Am. & Eng. Enc. Law, 2d ed. 431.   As is said in High on Injunctions, § 5 : "The court will not, however, upon an application for an interlocutory injunction, shut its eyes to the question of the probability of plaintiff ultimately establishing his demand, nor will it by injunction disturb defendant in the exercise of a legal right without a probability that plaintiff may finally maintain his right as against that of the defendant.   And where the question involved is merely of a pecuniary nature, plaintiff will not be allowed an interlocutory injunction unless he can satisfy the court that there is a probability that his bill will not be dismissed upon the hearing."

When counsel's argument is weighed in the light of the foregoing principles, it will be seen that it ignores the possible legal effect of the action of the directors and of the voters subsequent to the bringing of this action.   If their action in selecting the original proposed site was sufficiently curative to make valid the contracts complained of, this court, in holding that the board had no original authority to select a site and reversing the order denying the preliminary injunction, would be merely deciding a moot question and directing the entry of an injunctional order by the district court that it would be its duty to dissolve summarily upon motion.   The injury of which the plaintiffs complain is only that which would flow from the performance of an illegal contract, and if circumstances no longer exist which show a prima facie case of illegality no injunctional order should be made.   It clearly appears that such an order is not necessary to determine or protect any rights of the plaintiffs as they existed prior to the July election; for, as indicated above, no injury is claimed to have been suffered prior to that date.   The plaintiffs have no right to stop all proceedings looking toward the construction of the building; they have only the right to stop illegal proceedings, and if the effect of the July election was, prima facie, to legalize the future proceedings under the existing contracts, the order appealed from should be affirmed.   This, then, is the real question for our determination.

We are of the opinion that, notwithstanding the irregularity in the making of the contract, resulting from the failure of the first election to constitute a valid selection of a building site, the action of the voters on July 20, as shown by the answer, amounted to a ratification of the selection. Also to a ratification of the previous steps taken by the board toward carrying out the instructions of the voters at the first election to provide a suitable school building. The power of school districts to contract for the construction of school buildings is not questioned. But before there can be a valid exercise of the power, it is essential that the voters shall have selected a site for the location of the building. We find nothing in the statute to prevent the voters of a school district from ratifying by their own subsequent action a previous invalid selection of a site. To the effect that this may be done, see Board of Education v. Carolan, 182 Ill. 119, 55 N. E. 58; Nichols v. School Dist. 39 Wash. 137, 81 Pac. 325; Leighton v. Ossipee School Dist. 66 N. H. 548, 31 Atl. 899.

It seems to us to be immaterial, under § 1190, Compiled Laws of 1913, as amended by chapter 127 of the Session Laws of 1915, whether the question of the selection of a site by the voters be submitted as a part of a compound question involving consolidation and building as well, or whether it be separately submitted. The requirements of the statute are properly met if the voters have been given a fair opportunity to determine the question in an election regularly held. In the case at bar it seems that ample opportunity has been afforded for an expression of preference for a site. The site having been legally determined, it remains to be seen whether the building contract is ratified.

Municipal corporations are liable upon contracts for a corporate purpose and within the scope of corporate powers to the same extent as individuals; and, similarly, they may ratify contracts made on their behalf which they possess authority to make. See State ex rel. Carthage v. Cowgill & H. Mill. Co. 156 Mo. 620, 57 S. W. 1008; Sullivan v. School Dist. 39 Kan. 347, 18 Pac. 287; L.R.A.1915A, 1028, note. The ratification, however, cannot be given a retroactive effect which would enable the corporation to escape compliance with essential preliminary requirements. Henderson v. Long Creek School Dist. supra; 19 R. C. L. § 360. In the instant case the only requirement lacking at the time

the contract was made was a vote of the electors resulting in the selection of a particular site, and the statute has since been amply satisfied in this respect.

For the foregoing reasons, the order appealed from is affirmed.

GRACE, J. I concur in the result.