A. D. WEEKS, Percy Sherwood, R. O. Kraft, Richard P. Freeman, and Gordon W. Randlett, Respondents, v. CHARLES HETLAND, D. D. Sullivan, and Mrs. A. W. Beals, Individually and as Members of the School Board of Common School District No. 96, Cass County, North Dakota; Henry Lanxon, Individually and as Clerk of said School Board; Mary Clark, Individually and as Treasurer of Said School Board; and Common School District No. 96, a Municipal Corporation, Appellants, and CITY OF FARGO, a Municipal Corporation, and the Board of Education of the City of Fargo, Interveners and Respondents.

(202 N. W. 807.)

**Schools and school districts — resident taxpayer can sue to prevent unlawful expenditure of funds of school district.**

1. One who is a resident and taxpayer within a school district is clothed

---

Note.—(1) Right of taxpayer in absence of statute to enjoin unlawful expenditures of school moneys, see annotation in 36 L.R.A.(N.S.) 16; 24 R. C. L. 597; 3 R. C. L. 1376.

(5) Judgment conclusive only as to facts actually decided, 15 R. C. L. 977; 3 R. C. L. Supp. 514; 4 R. C. L. Supp. 1028; 5 R. C. L. Supp. 861.

with such an interest as will entitle him to maintain an action on his own behalf and on behalf of the public to prevent the unlawful expenditure and dissipation of the funds of such district.

**Parties — both city and board of education can intervene in taxpayer's suit to prevent expenditure of money of school district.**

2. Under the provisions of the legislative act creating the Fargo school district, providing that the title to all property of the Fargo school district shall be in the city of Fargo for the use and benefit of such district and vesting in the board of education thereof authority to administer the affairs of the district and control over the property and funds of such district, it is held that both the city of Fargo and the board of education have sufficient interest in a legal controversy begun as a taxpayer's suit and involving funds to which the district makes a claim, to warrant intervention as parties therein.

**Schools and school districts — special school district composed of incorporated city is ipso facto enlarged by annexation of contiguous territory to city.**

3. Where a special school district is composed of an incorporated city alone and the city limits are extended by the annexation of contiguous territory to the city, the special school district is ipso facto enlarged so as to include the territory annexed to the city. Harrison School Dist. v. Minot, 48 N. D. 1189.

**Municipal corporation — dissolution of village effective six months from date of election.**

4. Under the statute, § 3903, Comp. Laws, 1913, where at an election called for that purpose, a majority of the voters vote in favor of the dissolution of an incorporated village, such dissolution becomes effective and complete at the expiration of six months from the date of the election, although the final adjustment of the affairs of the village has not been completed.

**Judgment — judgment bar to extent of issues litigated.**

5. A judgment entered in one action is effective as a bar in another and later action only to the extent of the issues litigated and determined in the former.

**Municipal corporation — annexation must strictly comply with statute; doubt as to powers resolved against corporation.**

6. The power of annexation conferred on cities by chapter 68, Session Laws 1915 is arbitrary and extraordinary and when such power is exercised the statute must be strictly complied with. A municipal corporation has only those powers that are expressly conferred by statute or are necessarily implied, and doubtful claims of power or doubt or ambiguity in the terms used by the legislature are resolved against the corporation.

**Municipal corporation — resolution describing territory annexed held sufficient.**

7. Under chapter 68, Session Laws, 1915, providing that "any city in this

state may so extend its boundaries as to increase the territory within the corporate limits thereof not to exceed one-fourth of its area, by a resolution of the city council passed by two-thirds of the entire members-elect, particularly describing the land proposed to be incorporated within the city limits, setting forth the boundaries and describing the land, *platted by blocks and lots; Provided, that at least two-thirds in area of the territory described in such resolution and proposed to be incorporated within such limits shall have previously been platted into blocks and lots,*" where the territory proposed to be annexed consists wholly of subdivisions and additions which have been platted into blocks and lots, a resolution of the city commission which describes the territory proposed to be incorporated, sets forth the boundaries thereof by metes and bounds and particularly refers to the plats on file and of record in the office of the register of deeds, is sufficient.

**Municipal corporation — land annexed held sufficiently platted.**

8. Where in laying out a town plat the blocks or squares formed by the intersection of the streets therein are not numbered or verbally designated as such but are subdivided into lots and the lots numbered in progressive numbers, such territory is platted into lots and blocks so as to meet the requirements of chapter 68, Session Laws, 1915.

**Municipal corporation — territory annexed held not used exclusively for farming purposes.**

9. Record examined and *held,* for reasons stated in the opinion, that the greater portion of the territory proposed to be annexed to the city of Fargo was not used exclusively for farming or pasturing purposes.

Opinion filed February 4, 1925. Rehearing denied March 11, 1925.

Appeal and Error, 4 C. J. § 2541 p. 651 n. 46. Costs, 15 C. J. § 70 p. 55 n. 76. Judgments, 34 C. J. § 1231 p. 812 n. 56; § 1235 p. 817 n. 84. Municipal Corporations, 28 Cyc. p. 191 n. 75; p. 199 n. 26; p. 201 n. 39 New; p. 206 n. 92 New; p. 252 n. 61; p. 258 n. 38; p. 263 n. 74; p. 265 n. 11. Schools and School Districts, 35 Cyc. p. 845 n. 53 New; p. 1050 n. 1; p. 1051 n. 23.

Appeal from the District Court of Cass County, *Wolfe, J.*
Modified and affirmed.

*Melvin A. Hildreth,* for appellants.

*Lawrence, Murphy & Nilles,* for respondents.

*W. H. Shure,* for interveners and respondents.

NUESSLE, J. The plaintiffs in this action sought to restrain the
52 N. D.—23.

defendants, purporting to act as the officers of School District No. 96 of Cass county, from entering into and carrying out certain contracts and generally from functioning as officers of that district.

The facts essential to an understanding of the legal propositions involved are shortly as follows: The city of Fargo is a municipal corporation. Its area in March, 1924 was approximately 2500 acres. In 1910 the village of North Fargo was incorporated under the laws of the state. The village included within its boundaries territory contiguous to the city of Fargo. After its incorporation as a village, North Fargo improved streets, laid sidewalks, built a waterworks system and established a sewer system. It was supplied with electricity from the Fargo plant, and was served by the Fargo street car system. The area of North Fargo was about 346 acres. All of the territory within its boundaries was platted. The platted territory consisted of Ohmer's Subdivision, Hole's Subdivision, Chandler's Broadway Addition, Hogan's Addition, and North Broadway Addition. Ohmer's Subdivision was platted in 1880 and the various other tracts at different times thereafter. In 1920 the city of Fargo attempted to annex a portion of the territory included within the Village of North Fargo. This attempt was resisted by certain of the citizens of North Fargo and was not accomplished. Subsequently, the city again sought to annex a portion of the village and was again defeated in its undertaking. See North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977.

In April, 1923 an election was held in North Fargo for the purpose of voting upon the question of the dissolution of the village. A majority of the voters at such election voted to dissolve the same. The result, however, was challenged and litigation followed. This court, however, held that the election was valid. See Williams v. Sherwood, 51 N. D. 520, 200 N. W. 782.

The school district of the city of Fargo was organized under a special act of the territorial legislature. Its boundaries are co-extensive with those of the city of Fargo. School District No. 96, Cass county has long been organized as such. It comprised the village of North Fargo and some 240 acres of unplatted territory lying contiguous to the village of North Fargo. No children of school age lived in the unplatted territory. In March, 1924 the city of Fargo, purport-

ing to act under the provisions of chapter 68, Session Laws, 1915, acting on the assumption that the village had been dissolved as a result of the election in 1923, to which reference has heretofore been made, took steps to annex that portion of the territory which had comprised the village. The city commission passed a resolution, as required by the terms of the act, and caused the same to be duly published. No protest signed by a majority of the owners of property within the territory proposed to be annexed was filed within the time 'prescribed by the act and the territory was declared to be annexed.

The defendants in this action were the elected and appointed officers of school district No. 96. Prior to 1924 the school officers had provided school facilities for the children in the district by arrangement with the board of education of the city of Fargo and had no school facilities of their own within the district. In August, 1924 the parents of some 25 or 30 children of school age, residing within the district and within that portion thereof which had comprised the village of North Fargo, petitioned the defendant board to provide suitable school facilities within the district. The defendants thereupon took steps to procure a suitable school building, to contract with teachers for a school to be conducted therein and generally to make arrangements for the erection and carrying on of a school. School district No. 96 had been levying and collecting school taxes and had in its treasury funds in a considerable amount.

In September the plaintiffs instituted this action praying that the defendants be enjoined from carrying out their contracts in that behalf made, from paying out of the moneys that they had in their hands as the officers of District No. 96 and generally from functioning as officers of such district. They brought such action as taxpayers and on the theory that the proceedings had by the city of Fargo were effectual to extend the boundaries of the city of Fargo so as to include that portion of district No. 96 which was platted, that thereby such territory became and was included within and a part of the Fargo school district and, by reason thereof, the Fargo school district acquired an interest in and to the money and property belonging to school district No. 96, and the officers of district No. 96 were ousted from their offices insofar as such territory was concerned and had no right to function further therein in any way.

The plaintiffs in their complaint set out that they were citizens, residents and taxpayers of the city of Fargo and property owners within the territory which had comprised the village of North Fargo; that they were the parents of children of school age and brought the action on their own behalf and on behalf of all citizens, taxpayers, and parents of children similarly situated. They further set out the facts with reference to the alleged dissolution of the village of North Fargo and the incorporation of the territory comprising it into the city of Fargo; the extension of the Fargo school district thereby to include such territory; that the defendants were, prior to the annexation of such territory, the school board and officers of district No. 96; that they had in their custody and control the property and money of school district No. 96 and had failed and refused to turn over and account therefor, and were wrongfully retaining, using and expending the same without proper authority. To this complaint the defendants demurred on the ground that the plaintiffs had no legal capacity to sue and upon the further ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendants thereupon answered, denying the matters set out and contained in the complaint, and particularly denying that the village of North Fargo had been dissolved and become unorganized territory and that the territory comprising the same had been annexed to and incorporated into the city of Fargo, and that the city or the board of education thereof had jurisdiction therein; set out that the acts sought to be restrained had been fully performed, and pleaded further that the attempted annexation of the territory which had comprised the village of North Fargo was ineffectual for the reason that the territory in question was not platted into lots and blocks and was pasture and agricultural land and that the proceedings by the city of Fargo were ineffectual and void because of failure to comply with the requirements of the statute in that behalf provided. Thereafter the city of Fargo and board of education of the city of Fargo asked leave to intervene. Leave was granted and the interveners served and filed their complaints in intervention, pleading substantially the matters set out in the original complaint, and, in addition, alleging their interests in the results of the litigation. To these complaints, also, the defendants demurred. The demurrers were overruled. The defend-

ants thereupon answered, setting out substantially the same matters and things as set out in their answer to the complaint, and the cause came to trial. In the meantime, on motion of the plaintiffs, a temporary restraining order was issued. Thereafter the case was tried and the court made its findings of fact and conclusions of law in favor of the plaintiffs and ordered judgment accordingly. From this judgment the defendants appeal.

The defendants assign many specifications of error. They complain, first, on account of the order of the trial court in overruling the demurrer to the complaint, on account of the orders overruling the demurrers to the complaints in intervention, on account of the issuance of the temporary restraining order, and on account of numerous errors of law made by the trial court.

We think that the objection to the right of the plaintiffs to bring the action is without merit. The plaintiffs set out that they are taxpayers and residents within the territory in controversy and the parents of children of school age therein, and that they bring the action on behalf of themselves and of all others similarly situated. We think that they thus appear to be clothed with such an interest as will entitle them to maintain the action. The right of a taxpayer to intervene in his own behalf and on behalf of the public, to prevent the unlawful expenditure and dissipation of public funds, is too well established to require or warrant any further discussion. See Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Storey v. Murphy, 9 N. D. 115, 81 N. W. 23.

The next objection raised by the defendants is to the order permitting the city of Fargo and the board of education of Fargo to intervene. Under the act providing for the creation of the Fargo school district, enacted by the territorial legislature in 1877, and as subsequently amended, the title to all property of the Fargo school district is in the city of Fargo for the use and benefit of such school district, and under the provisions of the same act the board of education of such school district is vested with the authority to administer the affairs of the district and with the control over the property and funds of such district. We, therefore, think that there was no error in permitting the city of Fargo and the board of education thereof to intervene and that

they are proper parties to the litigation. See Red River Valley Brick Co. v. Grand Forks, 27 N. D. 8, 145 N. W. 725.

The defendants also urge that relief in this case by way of injunction must be denied for the reason that the acts sought to be restrained have already been done; that a school building has been provided, teachers contracted with to teach therein, and a school erected which is now functioning. In support of this position they cite and rely upon the cases of Iverson v. Williams School Dist. 42 N. D. 622, 172 N. W. 818, and Thompson v. Vold, 38 N. D. 569, 165 N. W. 1076 and the authorities there cited. We think that there can be no question as to the correctness of the propositions of law laid down in those cases. But the facts in the instant case are such that those propositions can have no application here. The plaintiffs are concerned rather with what the defendants intend and purpose doing in the future rather than with what they have already done. More than that, if the case on which the plaintiffs premise their demand for relief be as claimed, all the acts of the defendants with reference to the erection and maintenance of a school within the territory comprising the former village of North Fargo were and are wholly unauthorized and unlawful. That which was done, or which it is proposed to do, is not something which the defendants have authority to do, but are doing in an unauthorized manner, but something which they have no right or authority to do.

The defendants have devoted a considerable portion of their briefs to the proposition that there was error on the part of the district court in granting the temporary restraining order during the pendency of the action without requiring a bond from the plaintiffs and interveners under the provisions of § 7532, Comp. Laws 1913. We think that it is not necessary to consider this proposition at this time, for the reason that the case was tried upon its merits and is now before this court on appeal from the final judgment entered therein. Without regard to the question of the propriety of the order of the trial court thus complained of, we shall proceed to a consideration of the case on its merits.

It seems to us that the propositions which are vital to a determination of this litigation are narrowed down to two; first, as to whether or not the territory which comprised the village of North Fargo has been legally annexed to the city of Fargo and is now a part thereof; and,

second, if so, whether by reason of that fact the Fargo school district was ipso facto extended so as to include such territory. If these two questions be answered in the affirmative, then the judgment of the district court was right and must be affirmed. But, if either of these questions be answered in the negative, then there must be a reversal.

We think there is no difficulty as to the second question, for, if the boundaries of the city of Fargo were legally extended so as to include the territory which comprised the village of North Fargo, then by virtue of that extension such territory became a part of the Fargo school district. This matter is ruled by the case of Harrison School Dist. v. Minot, 48 N. D. 1189, 189 N. W. 338. In that case it is said that "where an incorporated city alone is organized as a special school district, the boundaries of the special school district constantly remain the same as the boundaries of the city, and in no event can the territory embraced within the special school district be less than the territory within the corporate limits of the city, and where the boundaries of the city are extended it follows, as a necessary legal consequence, that the boundaries of the special school district are similarly extended, and the territory so annexed to the city also becomes a part of the special school district, and subject to the control and jurisdiction of the board of education thereof."

The first question, however, is not so easy of solution. Whether the disputed territory was legally annexed to the city of Fargo depends upon (1) whether the village of North Fargo was dissolved, (2) whether the city of Fargo was estopped by the determinations arrived at in the two preceding attempts to extend the limits of the city of Fargo to include a portion of the territory here in dispute, and (3) whether the requirements of chapter 68, Session Laws 1915 were complied with in the attempted annexation.

We think that the determination in the case of Williams v. Sherwood, 51 N. D. 520, 200 N. W. 782, is conclusive on the question of the dissolution of the village of North Fargo. In that case this court held that the election on the question of dissolution was a valid election. It appears that at such election the vote was in favor of dissolution. It is true that we expressly held in that case that we were not concerned with the question of the proceedings subsequent to the election and that all that was properly determinable therein was the validity of such

election. But, under the statute, § 3903, Comp. Laws 1913, the vote having been in favor of the dissolution, thereafter, at the expiration of six months from the date of the election, the dissolution ipso facto became effective and complete. It is true the same statute requires further steps to be taken in adjusting matters growing out of the dissolution, but whether such adjustment was completed can make no difference as to the effect. It appears that at least some steps were taken in that direction. In any event the statute fixes a definite time after which the dissolution is complete. By no stretch of construction can it be said that dissolution is made to wait on adjustment. On the record, therefore, we must hold that the village of North Fargo was dissolved and went out of existence.

In 1920 the city of Fargo attempted to annex a portion of the territory now in dispute. An appeal was taken from the action of the city commission in that behalf, as provided by § 2 of chapter 68, Session Laws 1915. The annexation review commission to which this appeal was taken found that the territory then sought to be annexed was not such as could be properly incorporated within the city limits, by reason of the fact that the greater portion of such territory was used exclusively for agricultural and pasture purposes. This adjudication became and was final and the city acquiesced in it. It is the contention of the defendants that the bar of this adjudication is conclusive and final as against the proceedings involved in this particular litigation. We think, however, that the defendants are wrong in this contention. That adjudication was and remains final and conclusive in so far as that particular proceeding is concerned and in so far as that territory is to be considered under the facts as they then existed. But the instant case was concerned with different and greater territory, although including the territory there involved, and with conditions existing more than four years subsequent to the time of that proceeding. That adjudication did not bar the city commission from proceeding as it did in March, 1924.

Defendants further urge the bar of the final judgment entered in the case of North Fargo v. Fargo, 49 N. D. 597, 192 N. W. 977, in April, 1923. In that case the district court, in entering its final judgment, ordered that the city be forever restrained from annexing or attempting to annex any territory embraced within the boundaries of the

village of North Fargo. It is to be noted, however, that the territory there involved constituted only a portion of the territory comprising the village of North Fargo and only a part of the territory involved in the instant case. The decision in that case turned upon the proposition that under the statute, chapter 68, Session Laws 1915, a city may not annex a portion of the territory included within the limits of an incorporated village. When the proceedings in the instant case were begun the village of North Fargo was no longer in existence. The judgment in the former action is final and a bar as against that which was attempted in that action. But it is effective as a bar in another and later action only to the extent of the issues litigated and determined in the former. What we have said above with reference to the determination in the proceeding begun in 1920 is likewise applicable to the judgment entered in the case of North Fargo v. Fargo. Such judgment did not estop the city from beginning another proceeding to annex the territory, under other circumstances, after the dissolution of the village.

There remains, then, the question as to whether the requirements of chapter 68, Session Laws 1915 were complied with in its proceeding begun in March, 1924. Defendants contend that the power of annexation as conferred by the statute is arbitrary and extraordinary; that when such power is exercised the statute must be strictly complied with. In this we think that defendants are right. This court has heretofore held that a municipal corporation has only those powers that are expressly conferred by statute or necessarily implied, and that doubtful claims of power, or doubt or ambiguity in the terms used by the legislature are resolved against the corporation. See North Fargo v. Fargo, supra; Red River Valley Brick Co. v. Grand Forks, 27 N. D. 8, 145 N. W. 725; Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403. In view of this rule, how stands the case?

Defendants insist that the resolution passed by the city commission of the city of Fargo, and thereafter published, as required by chapter 68, Session Laws 1915, was insufficient in that such resolution, while it particularly described the tract proposed to be incorporated within the city limits, by setting forth the boundaries by metes and bounds, did not describe by blocks and lots that portion of it which was then platted. The statute in question reads: "Any city in this state may

so extend its boundaries as to increase the territory within the corporate limits thereof not to exceed one-fourth of its area, by a resolution of the City Council passed by two-thirds of the entire members-elect, particularly describing the land proposed to be incorporated within the city limits, setting forth the boundaries and describing the land, *platted by blocks and lots; Provided, that at least two-thirds in area of the territory described in such resolution and proposed to be incorporated within such limits shall have previously been platted into blocks and lots.*" (The italics are in the statute.)

The resolution described the land proposed to be incorporated within the city limits, set forth the boundaries by metes and bounds, and particularly referred to the plats of the same on file and of record in the office of the Register of Deeds of Cass county. We think that the purpose of the statute is to have the boundaries of the territory proposed to be incorporated, outlined and made certain, and that it is not contemplated that such of the territory as has been platted into lots and blocks shall necessarily be described by lots and blocks. The description required by the statute is not of each particular and individual block and lot, but of the land platted by lots and blocks. A description of any lot or block would be meaningless, if no reference were made to the recorded plat which defined the same, and where the whole of the platted tract is incorporated a description by reference to the recorded plat thereof is a sufficient description by block and lot. It is the plain purpose of the statute that notice be given so that whosoever may be affected by the proposed action may object if he desires to do so. Such purpose is effectually attained where, as in this case, the whole of a platted tract is to be incorporated, by notice of that fact. The owner of a single lot in the tract has notice that his lot is included, if he has notice that the whole of the platted addition or subdivision of which it is a part is included. Such a description as was here given complies with the statute both by setting forth the boundaries (by metes and bounds) and by describing the land platted by lots and blocks (by reference to the recorded plats of the subdivision or addition.) We think, therefore, that there is no basis for the defendants' contention in this respect and that the resolution was sufficient.

The defendants next contend that two-thirds of the territory proposed to be thus incorporated into the city of Fargo was not platted

into lots and blocks as required by the statute. The ground for this contention is that Ohmer's Subdivision and North Broadway Addition, both of which are included within such territory, were not platted in lots and blocks, but into lots only. It appears from the record that the territory comprising these two tracts was platted as required by the provisions of article 1, chapter 49 of the Political Code, Comp. Laws 1913 (§§ 3942–3952), and particularly in accordance with § 3943 thereof. The territory thus platted was cut into squares or rectangles by streets duly dedicated and which were continuations of the streets of the city of Fargo adjacent thereto. Such squares or rectangles were in turn divided into lots. The lots were numbered consecutively, no two lots in the same subdivision or addition having the same numbers, but the squares or rectangles were not numbered. Section 3943, Comp. Laws 1913 provides that "all the in-lots intended for sale shall be numbered in progressive numbers or by squares in which they are situated, and their precise length and width shall be stated on said map or plat; and out-lots shall in like manner be surveyed and numbered and their precise length and width stated on the plat or map, together with any streets, alleys or roads which shall divide or border the same." This section is of long standing in the statutes and appeared in substantially the same form as § 2, of chapter 26, of the Political Code of 1877. It is obvious, we think, that when chapter 68, Session Laws 1915 was enacted § 3943 must have been taken into consideration, and it is equally obvious that the legislature contemplated that a compliance with § 3943 would be sufficient to warrant the incorporation of territory thus platted. That the territory platted and within and included in the rectangles made by the intersections of the various streets was not numbered and designated as blocks and squares is immaterial. The numbering or the designation of blocks and squares as such is simply for purposes of convenience in identifying any part thereof that may be transferred by description and the same end is attained by numbering all of the lots consecutively, the the statute provides may be done and as was done in this particular case. The statutes nowhere define the term "block," and considering §§ 3942 et seq. it seems plain that where the term block is used elsewhere in the statutes with reference to the plat of a city, village or town, it is used synonymously with the term square. See also Fraser v. Ott, 95 Cal. 661, 30 Pac. 793; Slater v.

Fire & Police Bd. 43 Colo. 225, 96 Pac. 554; Harrison v. People, 195 Ill. 466, 63 N. E. 191; Bowlus v. Iola, 82 Kan. 774, 109 Pac. 405; Olsson v. Topeka, 42 Kan. 709, 21 Pac. 219; Gilsonite Roofing & Paving Co. v. St. Louis Fair Asso. 231 Mo. 589, 132 S. W. 657. In the instant case the fact that when the various tracts were platted the rectangles made by the intersecting streets were not numbered or verbally designated as blocks or squares, did not change the fact that they were blocks or squares.

Defendants further contend that the territory proposed to be incorporated was not subject to such action for the reason that more than fifty per cent of it was used exclusively for farming or pasturing purposes. Now, it appears from the record that the territory in question had a population of approximately five hundred people living in about 125 different dwellings. Some of these people were market and truck gardeners who carried on their business within the territory here involved. But the greater number were business and professional men, artisans and laborers, having their businesses and employments in the city of Fargo or elsewhere. Many of them had large lots, only a small portion of which were used for strictly residential purposes, the remainder being used for garden or pasture. Many of the lots in the territory proposed to be annexed were owned by non-residents. There were over three hundred owners in all. Many of these non-residents made no use of their properties. Apparently the lots were being held as city property for speculative purposes. As one of the witnesses put it, when the Fargo real estate men made a charge of $2.00 per lot for the use of the vacant lots so owned, that was considered too much and the lots were not rented. If used, they were used by people who were in fact trespassers for garden or pasture purposes. Such a use was not an exclusive use for agricultural or pasture purposes within the meaning of the statute. The fact that the soil was fertile and that the tracts were so used was not enough. Consideration must also be taken of the circumstances including the intent of the owners. This territory was platted into lots and blocks. The lots were sold to and owned by many individuals. Streets, continuations of those of the adjacent city, were laid out, improved, and used. The community had a waterworks and sewer system. It was served with electricity from the Fargo plant. The Fargo street car system operated through it. It is unreasonable

to say that under such circumstances the picketing of a villager's cow on a non-resident's lot without leave or license of the owner, was an exclusive use thereof for pasture purposes. See State ex rel. Crow v. Fleming, 158 Mo. 558, 59 S. W. 118. Nor do we believe that a man having his place of business or following his vocation in the city of Fargo and owning and residing on a five-acre tract in the territory in question, a small portion of which tract was used for house and lawn and garage and the remainder for a flower or vegetable garden or corn or alfalfa patch, could reasonably contend that the portion which was used for flowers or vegetables or corn or alfalfa was used exclusively for agricultural purposes. We think that such a tract must be considered as a whole and so considered its use was not exclusively agricultural. Measured in this way, it is beyond question that much less than fifty per cent of the territory sought to be annexed was used exclusively for farming or pasturing purposes.

The defendants insist that costs should not be taxed against them. This matter of annexation which lies at the bottom of the instant litigation has been in controversy for years. The instant case is the fourth of a series growing therefrom which has been passed upon by this court. The opinion of this court in the case of Williams v. Sherwood, 51 N. D. 520, 200 N. W. 782, was not handed down until September, 1924. The defendants were and long had been the officers of School District No. 96. Had there been, as they contended, no dissolution of the Village of North Fargo, they would have continued as such, clothed with power and authority to do the acts which the plaintiffs sought to enjoin. As such officers they were charged with the duty of providing proper school facilities for the children of the district. They were petitioned to furnish such facilities. This they attempted to do. In August, 1924 and less than thirty days prior to the initiation of the instant case, they were notified by the intervener Board of Education of the city of Fargo that they would be required to make provision for the payment of tuition for such of the children of their district as might attend the Fargo schools during the school year of 1924 and 1925. They were under the necessity of taking some action. Such acts as they performed were performed apparently in good faith and under the advice of counsel. Under the circumstances, no costs should be taxed against them.

We think that the matters we have discussed and disposed of above are decisive of the litigation. Numerous assignments of error are set out which we have not specifically referred to, but we think that specific reference is not required by reason of the discussion as had. It is to be remembered that this action was not brought to determine the specific interests of the city of Fargo and the Fargo school district and what remains of school district No. 96, nor as it was tried was it to compel an accounting on the part of the defendants or to secure an adjustment of conflicting claims. It was brought to restrain action on the part of the defendants inconsistent with and detrimental to the rights and interests of the plaintiffs and interveners. As to what those rights and interests are in particular, the lower court did not attempt to measure or determine. Neither will this court do so. The judgment of the district court, except as to costs, must be affirmed, neither party to recover costs in either court. It is so ordered.

CHRISTIANSON, Ch. J., and BIRDZELL and JOHNSON, JJ., and JANSONIUS, Dist. J., concur.

BURKE, J., being disqualified, did not participate; Honorable FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.